**EXXON CHEMICAL PATENTS, INC., Exxon Corporation and Exxon Research & Engineering Company, Plaintiffs–Appellants,**

v.

**THE LUBRIZOL CORPORATION, Defendant–Appellee.**

No. 97–1021.

United States Court of Appeals, Federal Circuit.

March 4, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined April 28, 1998.*

---

* Circuit Judge Schall did not participate in the vote.

E. Edward Bruce, Covington & Burling, Washington, DC, argued for plaintiffs-appellants. With him on the brief was Thomas L. Cubbage, III. Of counsel was Paul J. Berman.

Timothy B. Dyk, Jones, Day, Reavis, & Pogue, of Washington, DC, argued for defendant-appellee. With him on the brief was Kenneth R. Adamo. Also on the brief were S. Leslie Misrock, Pennie & Edmonds, New York City, and Stanton T. Lawrence, III, Washington, DC.

Before PLAGER, CLEVENGER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

■ Exxon Chemical Patents, Inc., Exxon Corporation, and Exxon Research & Engineering Co. (collectively "Exxon") appeal from the district court's denial of their motion for a new trial in a patent infringement action that Exxon brought against The Lubrizol Corporation. Exxon filed the motion for a new trial on infringement under the doctrine of equivalents after this court reversed an earlier jury verdict in Exxon's favor on literal infringement. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.,* 64 F.3d 1553, 35 USPQ2d 1801 (Fed.Cir.1995), *cert. denied,* 518 U.S. 1020, 116 S.Ct. 2554, 135 L.Ed.2d 1073 (1996). The district judge interpreted our mandate on the prior appeal as prohibiting him from granting a new trial, and he therefore denied Exxon's motion. Because our prior opinion was confined to the issue of literal infringement, we hold that the mandate did not deprive the district court of the power to grant Exxon's motion for a new trial on infringement under the doctrine of equivalents. We therefore vacate the denial of Exxon's motion for a new trial and remand to the district court for further consideration of that motion.

I

This appeal is another chapter in a lengthy and expensive patent litigation between Exxon and Lubrizol. Exxon is the owner of U.S. Patent No. 4,867,890, which is directed to a lubricant for automobile engines. Exxon filed suit against Lubrizol for patent infringement on the day the patent issued, September 19, 1989. Following extensive discovery and a ten-day trial, the jury returned a verdict in Exxon's favor. The jury verdict addressed only literal infringement. Exxon had deleted its proposed jury instruction on infringement under the doctrine of equivalents following the decision of the district judge to adopt Exxon's proposed claim construction. After the district court denied Lubrizol's motion for judgment as a matter of law, Lubrizol appealed to this court.

On appeal, this court rejected the claim construction proposed by Exxon and adopted a construction based on the one proposed by Lubrizol. *See Exxon Chem. Patents, Inc.,* 64 F.3d at 1557–58, 35 USPQ2d at 1804–05. The court held that under the correct claim interpretation no reasonable jury could have found that Lubrizol's products literally infringed Exxon's patent. Accordingly, the court reversed the judgment of the district court. 64 F.3d at 1560, 35 USPQ2d at 1806. Judge Nies dissented from the decision as to the proper claim construction and from the decision to reverse the judgment without remanding the case for a new trial. 64 F.3d at 1563–70, 35 USPQ2d at 1808–14 (Nies, J., dissenting).

The majority and dissenting opinions briefly addressed the question whether Exxon should be granted a new trial on infringement under the doctrine of equivalents. Judge Nies argued that Exxon was entitled to a new trial in light of the new claim construction adopted by the panel. *See* 64 F.3d at 1570, 35 USPQ2d at 1814 (Nies, J., dissenting). The majority responded in a footnote, stating that the "question of whether Exxon is now entitled to a jury trial on infringement under the doctrine of equivalents" had not been briefed or argued, and that the panel therefore "express[ed] no view on that question." 64 F.3d at 1555 n. 1, 35 USPQ2d at 1802 n. 1.

Exxon petitioned for rehearing. Although Exxon's petition was devoted to arguing the merits of its preferred claim construction, Exxon also requested, "out of an abundance of caution," that the panel clarify its opinion regarding Exxon's right to move for a new trial on doctrine-of-equivalents infringement. Exxon's petition was denied without the requested clarification.

Exxon subsequently filed a motion in the district court for a new trial on infringement under the doctrine of equivalents. The district judge denied the motion in a one-page order, stating that the court's decision left him with "no authority to grant a new trial." Exxon now appeals from that order, arguing that although our reversal of the jury verdict foreclosed any further proceedings relating to literal infringement, our mandate did not preclude the district court from entertaining a motion for a new trial on the issue of

infringement under the doctrine of equivalents.

## II

### A

This court's opinion in the prior appeal construed the claims of the patent and analyzed the issue of literal infringement. At the conclusion of the analysis of those issues, the court reversed the jury verdict and held that Lubrizol was "entitled to a judgment of noninfringement as a matter of law." The court further stated that its reversal was "without remand for a second trial."

Those statements in the court's opinion referred only to the issue of literal infringement. Any suggestion that the court meant to address the issue of infringement under the doctrine of equivalents is put to rest by the first footnote of the opinion, in which the court explained that the judgment under review was "limited to literal infringement." 64 F.3d at 1555 n. 1, 35 USPQ2d at 1802 n. 1. As to whether Exxon would be entitled to a new trial on infringement under the doctrine of equivalents, the court noted that the issue was not briefed or argued and that the panel therefore "express[ed] no view on that question." In light of that statement, it is clear that this court's mandate was not intended to address the question whether Exxon would be entitled to a new trial under the doctrine of equivalents. Under the general rule that an appellate mandate governs only that which was actually decided, the district court was therefore free to consider Exxon's motion for a new trial. *See Biggins v. Hazen Paper Co.,* 111 F.3d 205, 209 (1st Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 373, 139 L.Ed.2d 290 (1997); *Exxon Corp. v. United States,* 931 F.2d 874, 877–78 (Fed.Cir.1991).

Even without the express disclaimer in the court's opinion, it would be incorrect to conclude that the court's mandate encompassed an issue that was not presented to the court. Although in some cases issues not explicitly addressed by an appellate court may nonetheless be decided by necessary implication, *see* 18 James Wm. Moore, *Moore's Federal Practice* § 134.23[4] (3d ed.1997), this is not one of those cases. This court's opinion dealt only with the issues of claim construction and literal infringement. Resolution of those two issues did not require consideration of the doctrine of equivalents.

Our recent decision in *Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 42 USPQ2d 1897 (Fed.Cir.1997), is instructive here. After Laitram won a jury verdict in a patent infringement suit, NEC filed motions for judgment as a matter of law (JMOL) on the issues of infringement, willfulness, and claim identicality. 115 F.3d at 949, 42 USPQ2d at 1899. The district court granted the motion on infringement and denied the other two JMOL motions as moot. On appeal, this court reversed the JMOL order and remanded "with instructions to reinstate the jury verdict." *Laitram Corp. v. NEC Corp.,* 62 F.3d 1388, 1395, 36 USPQ2d 1206, 1211 (Fed. Cir.1995). On remand, the district court assumed that the mandate required it to reinstate the entire jury verdict and that NEC's outstanding JMOL motions must have been decided by implication. The district court therefore denied NEC's Rule 60(b) motion for relief from judgment. On appeal from that decision, this court reversed, finding that the mandate from the earlier opinion covered only the infringement issue. *Laitram Corp.,* 115 F.3d at 951–53, 42 USPQ2d at 1900–02. Because each of the JMOL motions presented alternative grounds for overturning the verdict in Laitram's favor, the court held that NEC was entitled to a ruling on the merits of those grounds in the district court after the original judgment was overturned.

Although this case involves an appeal from the denial of a JMOL motion, the same principle is applicable: in determining that Lubrizol did not literally infringe Exxon's patent, this court did not dispose of Exxon's doctrine-of-equivalents infringement claim; in fact, the court made clear that it was not addressing that issue. The mandate therefore cannot be interpreted as resolving the doctrine-of-equivalents claim, and for that reason the mandate does not foreclose the district court from addressing it.

### B

■ Contrary to Lubrizol's suggestion, Exxon cannot be charged with having aban-

doned its doctrine-of-equivalents theory of liability by not submitting it to the jury or raising it on the previous appeal. Once the district judge construed the claim language in Exxon's favor, the doctrine-of-equivalents issue in the case became moot. Exxon could not realistically be expected to request alternative jury instructions asking for an advisory verdict on whether the patent would be infringed under the doctrine of equivalents on Lubrizol's proposed claim construction. Nor could Exxon, as appellee, have been expected to defend the judgment in its favor on the basis of a theory of liability that was never given to the jury. *See Laitram Corp.*, 115 F.3d at 954, 42 USPQ2d at 1902–03. The question whether there could be doctrine-of-equivalents infringement under the claim construction adopted by this court became a critical issue in the case only after this court's decision on appeal. For that reason, this court did not address the merits of Exxon's claim that it is entitled to a new trial on infringement under the doctrine of equivalents, and the district court therefore erred in concluding that it was barred by this court's mandate from considering Exxon's new trial motion. *See Laitram Corp.*, 115 F.3d at 952, 42 USPQ2d at 1900–01 (court of appeals did not decide by implication issues that were moot in light of the district court's disposition of the case, were unripe for appellate review, and were not presented on appeal).

### III

■ Lubrizol argues that because Exxon asked for clarification of its right to move for a new trial on infringement under the doctrine of equivalents in its rehearing petition and got no response from this court, the court's denial of the rehearing petition reflects a decision that Exxon was not entitled to a new trial.

No inferences can be drawn from the court's silence in response to Exxon's request for clarification. Courts normally do not respond to petitions for rehearing and it would be a mistake to conclude that a court's non-response to an argument made in a rehearing petition necessarily means that the court has rejected that argument on the merits.

The inference that this court meant to rule on the merits of the new trial issue is particularly suspect in this case, since all that was presented to the court was a request for clarification. The court's failure to grant a request for clarification could well reflect the view that clarification was not required, rather than an intention to reject on the merits the legal argument on which Exxon sought clarification. *See Laitram Corp.*, 115 F.3d at 951, 42 USPQ2d at 1900 (court of appeals' denial of request for clarification carries "no inferential weight").

Lubrizol cites to *Fine v. Bellefonte Underwriters Insurance Co.*, 758 F.2d 50 (2d Cir. 1985), for the proposition that an appellate court must be presumed to have considered arguments made to it on appeal. The *Fine* court made that statement in the course of rejecting an attempt to reopen an earlier mandate based on a previous panel's alleged failure to make a required finding. *Fine* relied on *NLRB v. Brown & Root, Inc.*, 206 F.2d 73 (8th Cir.1953). Examination of *Brown & Root*, however, reveals the inapplicability of the principle to this case. *Brown & Root* explained that the purpose of rehearing petitions is "to direct the Court's attention to some material matter of law or fact which it has overlooked in deciding a case, and which, had it been given consideration, would probably have brought about a different result." *Id.* at 74. As explained earlier, the doctrine of equivalents was not at issue in the previous appeal and was immaterial to the decision on literal infringement. The court's silence with respect to Exxon's clarification request therefore does not carry a presumption of rejection on the merits.

■ Other courts have agreed that the denial of a rehearing petition does not constitute a decision on the merits of whether the losing party may obtain a new trial on remand. In *United States v. Cote*, 51 F.3d 178 (9th Cir.1995), the court of appeals reversed the defendant's conviction, after which the government filed a petition for rehearing requesting that the court modify its opinion to clarify that the government could move for a new trial in the district court. The court of appeals did not modify its opinion, and the defendant then argued that the Ninth Cir-

cuit's silence constituted a decision on the merits of the government's request. *See Cote,* 51 F.3d at 181. The Ninth Circuit rejected that argument, ruling that its summary denial of the rehearing petition did not imply any substantive judgment on the merits of the government's argument in the petition. The court found support for its conclusion in the Eleventh Circuit's decision in *Luckey v. Miller,* 929 F.2d 618, 621–22 (11th Cir.1991), in which the court held that a "summary denial of rehearing en banc is insufficient to confer any implication or inference regarding the court's opinion relative to the merits of a case." *Cf. Gough v. Rossmoor Corp.,* 533 F.2d 453, 454–55 (9th Cir.1976) (denial of rehearing petition containing motion for new trial did not preclude district court from considering the motion on remand). We agree with that principle and therefore conclude that Exxon's unsuccessful request for clarification in its petition for rehearing does not require that this court's mandate be read to resolve the question of Exxon's entitlement to a new trial under the doctrine of equivalents.

## IV

■ Quite apart from whether this court's mandate was intended to exclude a new trial under the doctrine of equivalents, Lubrizol contends that Exxon's failure in the prior appeal to secure a remand for consideration of a new trial on that theory of liability bars it from presenting its request for a new trial to the district court. As support for that position, Lubrizol relies on the Supreme Court's decision in *Neely v. Martin K. Eby Construction Co.,* 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967). According to Lubrizol, *Neely* holds that a verdict-winner who wishes to obtain a new trial in the event of a reversal on appeal is required to show grounds for a new trial in its brief on appeal or move for a new trial on rehearing in the court of appeals. Thus, in Lubrizol's view, a verdict-winner who loses on appeal cannot obtain a new trial by waiting until the case returns to the district court and moving for a new trial at that time.

## A

We do not read *Neely* as establishing the broad rule that Lubrizol advocates. In *Neely,* the plaintiff won a jury verdict in a tort action, and the defendant unsuccessfully sought judgment n.o.v. on the ground that the evidence was insufficient to support the verdict. The court of appeals, however, reversed the judgment of the district court and remanded "with instructions to dismiss the action." The plaintiff sought certiorari, contending that the court of appeals' action violated Rule 50(d), Fed.R.Civ.P., and the Seventh Amendment. According to the plaintiff, the court of appeals was required to remand the case to the district court to allow that court to determine whether to grant a new trial.

The Supreme Court held that it was not error for the court of appeals to direct entry of judgment for the defendant rather than remanding the case for the district court to consider whether to grant a new trial. The Court noted that there were many circumstances in which it would be error for a court of appeals to direct the entry of final judgment for the defendant, but the Court refused to adopt "an ironclad rule that the court of appeals should never order dismissal or judgment for defendant when the plaintiff's verdict has been set aside on appeal." 386 U.S. at 326, 87 S.Ct. at 1078.

As an example of a case in which it would be improper for the court of appeals to order judgment notwithstanding the verdict, the Court pointed to *Weade v. Dichmann, Wright & Pugh, Inc.,* 337 U.S. 801, 69 S.Ct. 1326, 93 L.Ed. 1704 (1949), in which the Court "modified a Court of Appeals decision directing entry of judgment *n.o.v.* because there were 'suggestions in the complaint and evidence' of an alternative theory of liability which had not been passed upon by the jury and therefore which might justify the grant of a new trial." 386 U.S. at 325, 87 S.Ct. at 1078. In that case and others, the Court observed, "an appellate court may not order judgment *n.o.v* .... where the record reveals a new trial issue which has not been resolved." The concern in cases such as that one, the Court added, "has been to protect the rights of the party whose jury verdict has

been set aside on appeal and who may have valid grounds for a new trial, some or all of which should be passed upon by the district court, rather than the court of appeals." *Id.*

The Court referred to two categories of cases in which it would sometimes be appropriate for the court of appeals to enter judgment. First, where an appellant shows a defect in subject matter jurisdiction or entitlement on a dispositive issue of law, "there can be no reason whatsoever to prevent the court of appeals from ordering dismissal of the action or the entry of judgment for the defendant." 386 U.S. at 327, 87 S.Ct. at 1079. The second, more complicated category that the Court identified was the class of cases turning on the sufficiency of the evidence at trial.

Addressing the situation in which a court of appeals sets aside a jury's verdict because the evidence was insufficient to send the case to the jury, the Court noted that even in that class of cases, there are some instances in which the plaintiff is entitled to a new trial rather than having a final judgment entered against it. Nonetheless, the Court observed, the new trial issues presented by those cases are typically ones that the district court has no special advantages or competence in dealing with, and thus the plaintiff may bring those issues directly to the court of appeals without moving for a new trial in the district court. In such cases, the Court noted, "the record in the court of appeals will very likely be a full one." 386 U.S. at 328, 87 S.Ct. at 1080. The Court therefore concluded that in that class of cases, there is "no substantial reason why the appellee should not present the matter to the court of appeals, which can if necessary remand the case to permit initial consideration by the district court." *Id.*

In such cases, the Court explained, if the appellee presents the grounds for a new trial in its brief or petition for rehearing, the court of appeals "may make final disposition of the issues presented, except those which in its informed discretion should be reserved for the trial court." 386 U.S. at 329, 87 S.Ct. at 1080. And even if the appellee presents no new trial issues in its brief or petition for rehearing, the court of appeals may order a new trial on its own motion or refer the

question to the district court. *Id.* The Court therefore determined that in light of the various ways that an appellee could protect its right to seek a new trial, there was no reason to bar the court of appeals from ordering the dismissal of the action in an appropriate case.

Turning to the facts of the case before it, the Court noted that the issue before the court of appeals was the sufficiency of the evidence and that the petitioner, as appellee, had "suggested no grounds for a new trial in the event her judgment was reversed, nor did she petition for rehearing in the Court of Appeals, even though that court had directed a dismissal of her case." 386 U.S. at 329, 87 S.Ct. at 1080. Nor did the petitioner suggest that the record was insufficient to present any new trial issue or that any other reason required a remand to the district court. Indeed, the Court pointed out, the petitioner had stated in her brief in the court of appeals that the case "was fairly tried and the jury was properly instructed." 386 U.S. at 329, 87 S.Ct. at 1080. For those reasons, the Supreme Court concluded that the court of appeals did not commit legal error when it directed the dismissal of the petitioner's action following the court's reversal of the jury verdict in her favor.

■ *Neely* thus stands for the proposition that in an appropriate case a court of appeals may direct that judgment be granted against an appellee without permitting the appellee to seek a new trial from the district court. The earlier panel decision in this case did exactly that with respect to Exxon's literal infringement claim. But the fact that the appellate court has the power to foreclose further proceedings in the district court does not imply that its judgments have that effect even when the court does not so direct. *Neely* explicitly tied the exercise of the appellate court's power to direct the entry of final judgment against the verdict-winner to the court's ability to make an informed judgment based on the record before it. Only in those circumstances would a decision by the court of appeals directing the entry of final judgment "serve the purpose of Rule 50 to speed litigation and to avoid unnecessary retrials." 386 U.S. at 326, 87 S.Ct. at 1078.

The *Neely* Court noted that Rule 50(d) was "not intended to 'alter the effects of a jury verdict or the scope of appellate review.'" 386 U.S. at 324, 87 S.Ct. at 1078. Thus, *Neely*'s discussion of the power of appellate courts did not implicitly adopt a new rule requiring all possible grounds for a new trial to be presented to the reviewing court, no matter how tenuous their connection to the issues on appeal. *Neely* likewise does not dictate that an appellate court's mandate must be read to prohibit a district court from granting a new trial unless the appellate court has specifically authorized it to do so. The primary question in this case, as in all such cases, is what the appellate court's mandate left for the district court to do. In this case, as we have indicated, we think it clear that our mandate left the district court free to consider Exxon's motion for a new trial on infringement under the doctrine of equivalents.

The Fifth Circuit's decision in *Conway v. Chemical Leaman Tank Lines, Inc.,* 644 F.2d 1059 (5th Cir.1981), illustrates the proper application of this principle. Conway, the plaintiff in a tort suit, raised two grounds in its motion for a new trial following an adverse jury verdict. The district court granted the motion, relying on only one of the two grounds. Conway's verdict in the subsequent trial was reversed on appeal because the grant of the new trial was erroneous. *See Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360 (5th Cir.1980). The Fifth Circuit's reversal was accompanied by remand instructions "to enter judgment upon that verdict for the defendant." 610 F.2d at 367. Under Lubrizol's interpretation of *Neely*, Conway's case would have ended at that point because her alternative ground for a new trial was not presented to the appellate court. Instead, Conway renewed her motion for a new trial in the district court, relying on the second of her two original grounds, and the district court granted the motion. On interlocutory review, the court of appeals affirmed. The court explained that Conway had timely raised the second ground for a new trial and that the previous appeal did not prohibit the district court from considering an issue that was never submitted to or decided by the appellate court. 644 F.2d at

1062. As in *Conway*, this court's decision on the literal infringement issue did not prevent the district court from considering a motion for a new trial on infringement under the doctrine of equivalents.

## B

*Neely* is distinguishable from this case in another important respect. In the fact situation presented in *Neely*, the Supreme Court found that the burden on the appellee to raise its new trial issues before the court of appeals was small. In other settings, the Court recognized, the burden would be much greater, and in those cases it would be inappropriate for the court of appeals to direct the dismissal of the appellee's complaint without giving the appellee an opportunity to present its new trial arguments to the district court. This case clearly falls in the latter category.

Rather than promoting judicial economy, the rule that Lubrizol proposes would place undue additional burdens both on the parties and on the appellate court. An appellee cannot be expected to preserve all issues that might conceivably give rise to a motion for a new trial, including those issues unrelated to the subject of the appeal. In a case that turns on claim construction, Lubrizol's rule would require an appellee to anticipate every possible claim construction that the appellate court might adopt and put forth grounds for a new trial under each possible claim construction. As a practical matter, the first opportunity that a party in Exxon's position would have to make its arguments for a new trial would be in a petition for rehearing, and rehearing petitions are normally not a suitable vehicle for making new arguments to the appellate court. *See Pentax Corp. v. Robison,* 135 F.3d 760 (Fed.Cir.1998). It thus seems clear to us that this case is a paradigmatic example of the kind of case in which it would be improper for an appellate court to dispose of the new trial issues, and in which the proper forum for raising the new trial issue in question is the district court. As in the *Weade* case that the Court discussed in *Neely*, Exxon did not have to raise its doctrine-of-equivalents theory of liability in the first appeal in order to be enti-

tled to seek a new trial on that theory in the district court, because the doctrine-of-equivalents theory constituted "an alternative theory of liability which had not been passed upon by the jury and therefore which might justify the grant of a new trial." 386 U.S. at 325, 87 S.Ct. at 1078.

We do not mean to imply that the motion for a new trial presented to the district court in this case is necessarily meritorious. Assessing the merits of the new trial motion is for the district court. We are unequipped on this record to make any substantive judgments regarding the merits of Exxon's doctrine-of-equivalents infringement claim. For that reason, we do not accept Lubrizol's invitation to affirm the district court's order on the ground that Exxon has not shown a basis for a new trial on its doctrine-of-equivalents theory; we leave to the district court the questions whether Exxon is entitled to a new trial on that theory and whether there is any procedural flaw in Exxon's motion that would prevent the district court from considering the motion on its merits. We simply hold that our prior mandate did not deprive the district court of the authority to entertain the motion and that nothing in the Supreme Court's decision in *Neely* compels a contrary conclusion.

V

As a final matter, we address the significance of the formal judgment issued with the earlier *Exxon* opinion. The operative language of the judgment consisted of the single word "reversed." Lubrizol attaches significant weight to the omission of the words "and remanded" from that judgment. According to Lubrizol, a judgment of reversal, standing alone, precludes any additional proceedings in the district court, and that only a judgment expressly providing for a remand contemplates that the district court still has tasks to fulfill.

Interpretation of an appellate mandate entails more than examining the language of the court's judgment in a vacuum. *See* Fed. R.App. P. 41(a) (appellate court's mandate includes both the judgment and the opinion of the court). As an initial matter, every appellate court judgment vests jurisdiction in the district court to carry out some further proceedings. In some cases, those further proceedings may be purely ministerial, as when a judgment for the plaintiff is reversed and the only matters that remain for the district court are to dismiss the complaint and enter the judgment in the docket. Frequently, however, the disposition of a case in the court of appeals will require the district court to undertake more significant proceedings. In either case, the nature of the district court's remaining tasks is discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion. *See In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895); *Laitram Corp.*, 115 F.3d at 952, 42 USPQ2d at 1901.

A case from the Supreme Court dealing with the mandate rule illustrates the point perfectly. In *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), the Court addressed the scope of its mandate from an earlier decision. The district court had found that it lacked the power to award attorneys' fees because the Supreme Court's opinion did not specifically provide for such relief. The Court held that the district court had erred because attorneys' fees were not at issue on the original appeal, and that the district court was free to consider whether the award of fees was appropriate. *Id.* at 168–69, 59 S.Ct. at 780–81. Despite the focus on the mandate rule in *Sprague*, however, the judgment was simply "reversed," rather than "reversed and remanded." *Id.* at 170, 59 S.Ct. at 781–82. That omission notwithstanding, the Court's opinion clearly anticipated that the district court would have additional work to do in the case. *Sprague* thus demonstrates that a judgment that does not specifically provide for a remand is not necessarily incompatible with further proceedings to be undertaken in the district court.

The Ninth Circuit recently dealt with the same issue in *United States v. Cote*, 51 F.3d 178 (9th Cir.1995), which we discussed earlier. In that case, the defendant was convicted of tax fraud, but his conviction was overturned on appeal because of trial error. The

appellate court's judgment ordered the conviction "reversed," but did not explicitly remand the case for further proceedings. In its petition for rehearing, the government asked the court to modify its opinion to include a remand to the district court. The petition was denied without comment or any change in the judgment. When the government moved in district court for a new trial, the district court judge denied the motion on the ground that the appellate court's judgment deprived it of the authority to order a new trial.

On appeal from the denial of the new trial motion, the Ninth Circuit reversed. The court held that the absence of a specific remand directive did not bar the district court from ordering a new trial, as long as the new trial would not be inconsistent with the mandate of the earlier opinion as gleaned from the judgment together with the accompanying opinion. 51 F.3d at 181–82.

■ *Cote* reaffirms the general rule that, following appellate disposition, a district court is free to take any action that is consistent with the appellate mandate, as informed by both the formal judgment issued by the court and the court's written opinion. The exclusion of an explicit remand in the first *Exxon* opinion was correct as it pertained to the issue on appeal, *i.e.*, literal infringement, and the mandate prohibited the district court from granting a new trial on that issue. Read in light of the accompanying opinion, however, the judgment did not deprive the district court of authority to consider Exxon's motion for a new trial on infringement under the doctrine of equivalents.

*VACATED and REMANDED.*