**AMERICAN VIDEO GRAPHICS, L.P. Plaintiff**

v.

**ELECTRONIC ARTS, INC., et al. Defendants**

No. 6:04–CV–398.

United States District Court,
E.D. Texas,
Tyler Division.

March 11, 2005.

Samuel Franklin Baxter, Marshall, Mike McKool, Jr. of McKool Smith, Dallas, TX, Travis Gordon White of McKool Smith, Austin, TX, for Plaintiff.

Wayne M. Barsky, Jacqueline G. Curnutte, Daniel M. Flores, Grant E. Kinsel of Gibson, Dunn & Crutcher, LLP, Los Angeles, CA, Aileen M. Dawson of Gibson, Dunn & Crutcher, LLP, San Francisco, CA, Y. Ernest Hsin of Gibson Dunn & Crutcher, LLP, Palo Alto, CA, David Andrew Segal of Gibson Dunn & Crutcher LLP, Irvine, CA, Lawrence Augustine Phillips and Clyde Moody, Siebman of Siebman, Reynolds Burg & Phillips, LLP, Sherman, TX, Jacqueline G. Curnutte, Daniel M. Flores, of Gibson, Dunn Crutcher LLP, Los Angeles, CA, Lawrence Augustine Phillips and Clyde Moody, Siebman of Siebman, Reynolds Burg & Phillips, LLP, Sherman, TX, Michael Edwin Jones of Potter Minton, Tyler, Patrick L. Patras, Ronald L. Wanke of Jenner & Block, Chicago, IL, Kristen Garvey Schulz of Jenner & Block, Dallas, TX, Matthew J. Brigham, Thomas J. Friel, Jr., and Timothy S. Teter of Cooley Godward LLP, Palo Alto, CA, John Flock, Richard S. Gresalfi, Dalia S. Grimberg, Greg A. Paradise, Lewis V. Popovski, Mark S. Raskin, of Kenyon & Kenyon, New York City, Melvin R. Wilcox, III of Wilson, Sheehy Knowles, Robertson & Cornelius, PC, Tyler, TX, Manuel Calderon and Marvin Craig Tyler of Wilson, Sonsini Goodrich & Rosati, Austin, TX, Deron R. Dacus of Ramey & Flock, Tyler, TX, Michael J. Smith and David B. Weaver of Vinson & Elkins, Austin, TX, Jacqueline G. Curnutte, Daniel M. Flores of Gibson, Dunn Crutcher, LLP, Los Angeles, CA, Clyde Moody Siebman of Siebman Reynolds Burg & Phillips, LLP, Sherman, TX, for Defendants Activision Inc. Atari Inc., Electronic Arts, Inc. Sega of America, Inc., THQ Inc., Take–Two Interactive Software, Inc., Vivendi Universal Games, Inc., Lucasarts Entertainment Co., Microsoft, Corp., Namco Hometek, Inc., Nintendo of America, Inc., Sony Computer Entertainment of America, Inc.,

Sony Online Entertainment, Inc., Square Enix, Inc., Tecmo, Inc., Ubisoft, Inc.

## ORDER

DAVIS, District Judge.

Before the Court is Defendants' Motion to Compel Supplemental Disclosures Pursuant to Patent Rule 3–1(c) (Docket No. 144). Having considered the parties' written submissions and oral arguments, the Court now memorializes its ruling from the bench denying the motion in part and granting the motion in part.

## BACKGROUND

American Video Graphics, L.P. ("AVG") claims that fifteen video game manufacturers ("Defendants") infringe its patent, U.S. Patent No. 4,734,690. AVG has identified roughly 800 games that it believes use infringing source code. Pursuant to the Court's Docket Control Order and Patent Rule 3–1,[1] AVG served its preliminary infringement contentions on Defendants. According to Rule 3–1(c), AVG's preliminary infringement contentions were to specifically identify how the instrumentality infringed AVG's patent by including:

A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

Defendants contend that AVG's 3–1(c) chart is not specific enough to put them on notice as to how, or which aspects of, their products infringe AVG's patent. For example, as to one defendant's games, the chart stated:

| Claim 1 | Accused Instrumentalities |
|---|---|
| 1. A three-dimensional panning method comprising the steps of: | Each Accused Instrumentality listed in Ex. B–1 performs three dimensional panning. |
| | For example, each Accused Instrumentality listed in Ex. B–1, when executed on a computer or video game system, is operable to perform a three dimensional panning method. |
| storing applied graphic information representing a three-dimensional object in a first three-dimensional coordinate modeling space; | Each Accused Instrumentality listed in Ex. B–1 stores applied graphic information representing a three-dimensional object in a first three dimensional coordinate modeling space. |
| | For example, each Accused Instrumentality listed in Ex. B–1, when executed on a computer or video game system, stores in memory information representing three-dimensional objects in a three-dimensional coordinate system. |

Quoting the Court's opinion in *STMi-*

1. The Patent Rules are available under "Local Rules" as "Appendix M" on the Eastern District of Texas's website at http://www.txed.uscourts.gov.

*croelectronics,* Defendants claim that this chart is inadequate because it does not provide notice of infringement that goes " 'beyond that which is provided by the mere language of the patent[ ].' " *STMicroelectronics, Inc. v. Motorola, Inc.,* 308 F.Supp.2d 754, 755 (E.D.Tex.2004). Defendants claim the information that should have been provided pursuant to Rule 3–1(c) is vital to them because they are about to make the source code to 800 games available to AVG, but they are ignorant of the factual basis for AVG's infringement accusations.

AVG argues that it has complied with Rule 3–1(c) and identified how the games infringe as best it could without access to the source code. According to AVG, many of the infringing features can be found throughout the game, and thus there is no way for AVG to accurately indicate where the infringement occurs without the source code. AVG, also relying *STMicroelectronics,* contends the preliminary contentions are intended to streamline the discovery process rather than provide a forum for litigation of the substantive issues and the preliminary nature of the 3–1 disclosures are inherent in the Rules, which allow parties to supplement their contentions when technical information is produced during discovery.

Defendants acknowledge that AVG is limited in its ability to identify how the games infringe without the source code. Defendants point out that AVG has played the games, and in doing so, came to the belief that the games infringe. Defendants suggest AVG produce "screen shots" to communicate how the games infringe. AVG responds that doing so would not inform Defendants of how the source code infringes and that such information is protected as attorney work product. Although the parties attempted to resolve this issue themselves, they reached an im-

passe, and Defendants move the Court to compel AVG to comply with 3–1(c).

## ANALYSIS

As the Court said in *STMicroelectronics,* the Patent Rules are designed to streamline the discovery process. *Id.* at 755 (quoting *Network Caching Tech., LLC v. Novell, Inc.,* 2003 WL 21699799, *4–5 (N.D.Cal.2003)). They provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute. The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun.

In non-software patent cases, plaintiffs are usually able to purchase defendants' products and ascertain the mechanics of how those products infringe before plaintiffs bring suit. But, there are times when plaintiffs' preparation is restricted by defendants' sole possession of the information plaintiffs need. Software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself. From this manifestation, plaintiffs must somehow divine whether the defendants' code infringes. Although defendants vigorously and rightly guard their source code, until plaintiffs have access to it, plaintiffs are typically unable to give highly specified infringement contentions. To the extent defendants are given vague infringement contentions, they are hampered in their ability to prepare their defense. In these situations, through Rules 3–6 and 3–7, the Patent Rules recognize the preliminary nature of plaintiff's preliminary contentions accommodate plaintiffs'

need to supplement their initial contentions. *Id.* at 755–56.

The Court finds AVG has complied with Rule 3–1(c) to the best of its current ability. To this extent, the Court **DENIES** Defendants' motion. Once AVG has access to the code, it will be able to supplement its 3–1(c) disclosures and better inform Defendants as to its infringement contentions. The parties have informed the Court that the escrow arrangements for making the source code available to AVG are nearly complete and that Defendants expect to begin depositing source code on a rolling basis very soon. To accommodate Defendants' need for more specific information, the Court **ORDERS** AVG to supplement its 3–1(c) charts with specific references to the source code within 30 days of Defendants depositing the code into escrow. AVG has informed the Court that it will use its best efforts to do so as quickly as it can. Defendants have informed the Court that they will accommodate AVG if AVG becomes overwhelmed by the amount or complexity of the code.

## CONCLUSION

For the reasons described above, the Court finds that AVG adequately complied with Rule 3–1(c)'s requirements given the information AVG possessed. Recognizing that this falls short of the specificity Defendants need, the Court **GRANTS** Defendants' motion in part and **DENIES** in part, as described above. The parties have demonstrated their ability to work together, and the Court trusts they will continue to do so.