# United States Court of Appeals
# for the Federal Circuit

---

**RETRACTABLE TECHNOLOGIES, INC.**
AND **THOMAS J. SHAW,**
*Plaintiffs-Appellees,*

**v.**

**BECTON DICKINSON AND COMPANY,**
*Defendant-Appellant.*

---

2013-1567

---

Appeal from the United States District Court for the Eastern District of Texas in No. 07-CV-0250, Chief Judge Leonard Davis.

---

Decided: July 7, 2014

---

CYNTHIA TIMMS, Locke Lord LLP, of Dallas, Texas, argued for plaintiffs-appellees. With her on the brief were ROY W. HARDIN and MARK R. BACKOFEN.

WILLIAM F. LEE, Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts, argued for defendant-appellant. With him on the brief were WILLIAM G. MCELWAIN, HEATH A. BROOKS, and ROBERT A. ARCAMONA, of Washington, DC. Of counsel was RUSSELL S. POST, Beck Redden LLP, of Houston, Texas.

---

Before LOURIE AND LINN,*Circuit Judges.*

LINN, *Circuit Judge.*

Becton, Dickinson and Company ("Becton") appeals from the district court's denial of Becton's motion to modify the district court's damages award following the partially successful appeal of the infringement judgment on which the award was based. *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, No. 2:07-cv-250-LED-RSP, 2013 WL 4037929 (E.D. Tex. Aug. 7, 2013) ("*Opinion*"). Because the mandate rule forecloses the relief that Becton seeks, we affirm.

## I. BACKGROUND

In 2007, Retractable Technologies, Inc. ("Retractable") sued Becton in the Eastern District of Texas, alleging that Becton's 1 mL and 3 mL Integra™ syringes infringed various claims of Retractable's patents. *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1301 (Fed. Cir. 2011). Becton had commercially launched its 3 mL syringe in March 2002 and the 1 mL syringe in May 2003. J.A. 348. At trial, Retractable presented its theory that infringement began in 2000 and that a hypothetical negotiation at that time would have resulted in a lump sum payment of approximately $72 million for a ten-year license to practice the patents in any type or number of syringes, granting Becton freedom to operate. *Id.* Becton countered with a lost profits theory that would have Retractable's recovery limited to approximately $5 million based on the sales of the 1 mL and 3 mL syringes, the vast majority of which were the 3 mL syringe. J.A. 477–78. Alternatively, Becton argued that a reasonable

---

* Randall R. Rader, who retired from the position of Circuit Judge on June 30, 2014, did not participate in this decision.

royalty would have been no more than approximately $3 million. *Id.* at 478. The jury ultimately found that both the 1 mL and 3 mL syringes infringed. The jury's verdict form included a number of interrogatories, including Interrogatory No. 6:

> If you have found that any of BD's [Becton's] accused devices infringe any of the asserted claims of any of the [patents-in-suit], then even if you have answered "yes" to any portion of Interrogatory Nos. 3 through 5 [regarding invalidity], please determine the amount of reasonable royalty damages that would fairly and adequately compensate RTI [Retractable] for infringement.

The jury responded: "$5,000,000." J.A. 143. The district court subsequently entered a final judgment in Retractable's favor and a permanent injunction against the continued sale of both syringes.

Becton appealed the infringement and validity determinations to this court but neither appealed nor requested a remand of the damages determination in the event the infringement or validity determinations were upset in any way. *Becton*, 653 F.3d at 1302. Becton simply requested that this court "reverse the judgment or, in the alternative, order a new trial on infringement and/or invalidity." J.A. 1057, 1099. In that appeal, we concluded that the district court misconstrued one claim term. As a consequence, we held as a matter of law that the 3 mL syringe could not infringe the asserted claims. Therefore, we reversed the district court's judgment that the 3 mL syringe infringed. *Becton*, 653 F.3d at 1311. But we affirmed the judgment that the 1 mL syringe infringed and that the claim at issue was not invalid. *Id.* Having no basis for a new trial on infringement or invalidity, no remand was ordered. *See id.*

Becton subsequently requested the district court to modify the permanent injunction and the damages award

in light of this court's decision. Becton used Fed. R. Civ.
P. 60(b)(5) as its vehicle for filing the motion, a rule under
which the court "may relieve" a party from a final judg-
ment when the judgment "has been satisfied, released, or
discharged; it is based on an earlier judgment that has
been reversed or vacated; or applying it prospectively is
no longer equitable . . . ." Becton also argued that inde-
pendent of Rule 60(b), modification was necessary to
conform the judgment to this court's mandate, contending
that the injunction and the damages award must be
adjusted to reflect the fact that the lower-selling 1 mL
syringe is the only remaining infringing product. Re-
tractable consented to modification of the permanent
injunction to exclude from its scope the non-infringing 3
mL syringe, and the district court so ordered, concluding
that its broad equitable powers allowed it to prospectively
modify that injunction. *Opinion* at *1. However, the
district court concluded that the mandate rule precluded
it from revisiting the damages issue because it was within
the scope of the original judgment and was not raised in
the prior appeal nor remanded to the district court for
reconsideration. *Id.*

Becton appeals. This court has jurisdiction under 28
U.S.C. § 1295(a)(1).

## II. STANDARD OF REVIEW

Interpretation of this court's mandate is a question of
law that this court reviews *de novo*. *Laitram Corp. v.
NEC Corp.*, 115 F.3d 947, 950–51 (Fed. Cir. 1997).

## III. ANALYSIS

Becton argues that this court's mandate, reversing
the infringement verdict for the 3 mL but not the 1 mL
syringe, required the district court to conduct new dam-
ages proceedings because the original judgment is incon-
sistent with that mandate. Becton further argues that
the issue of damages attributable only to the 1 mL syringe

was not within this court's mandate because it was not and could not have been considered previously.  To the extent the damages issue was within the mandate, Becton argues that the district court erred by declining to apply an exception to the mandate rule in cases of a substantial change in the evidence.  Lastly, Becton argues that it did not waive the argument over damages by failing to raise it in the previous appeal because it contends that before the court's mandate, Becton had no argument that the damages award itself was erroneous.

Retractable responds that the damages award, based on Interrogatory No. 6, is not inconsistent with this court's mandate. Retractable further argues that the damages issue is within the court's mandate because Becton could have and should have raised this issue in the previous appeal.  Retractable further argues that there has not been a substantial change in the evidence that would warrant an exception to the mandate rule.  Retractable also argues that Rule 60(b) cannot be used to support Becton's requested relief.

Becton's first argument, that the damages award is inconsistent with the mandate, puts the cart before the horse.  Considering that argument requires reconsideration of the damages award itself, which is possible only if the mandate rule allows revisiting the question, does not apply, or can be avoided by an exception.  Becton further contends that this court's mandate actually *requires* the district court to conduct further proceedings on damages to determine the effect of the reversal on any damages award.  We disagree.

Becton relies on *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007).  In that case, the court reversed a finding of infringement under one of three asserted patents and, though neither party briefed the issue, remanded to the district court to further consider the damages issue in light of that partial rever-

sal. *Verizon* remarked that "where the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial as to damages." *Id. See also NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) (remanding for further consideration of damages in light of a partial reversal and a general verdict); *Accentra, Inc. v. Staples, Inc.*, 500 F. App'x 922, 931 (Fed. Cir. 2013) (same).   But *Verizon*, *NTP*, and *Accentra* were all cases in which our court specifically remanded the question of damages to the district court, either because we were requested to do so or determined *sua sponte* under the circumstances before us that such action was appropriate.   The cases do not stand for the proposition that the district court is required, let alone permitted, to revisit damages in the absence of a reversal or remand of a damages determination within a judgment of invalidity or infringement appealed to this court.   While this court regularly issues remands when requested and appropriate, or on our own initiative if some but not all products are found on appeal not to infringe, there is no "normal rule" giving district courts the authority to regularly revisit or recalculate damages that fall within our mandate.

Becton's current substantive argument—that the damages award must be revisited if either one of the two products at issue are found not to infringe—could have and should have been raised in the previous appeal. Becton conceded at oral argument that in a single sentence in the previous appeal it could have raised the issue of remanding the damages issue.   *See* Oral Argument at 35:48, *Retractable Techs., Inc. v. Becton Dickinson & Co.,* No. 2013-1567, *available at* http://www.cafc.uscourts.gov/ oral-argument-recordings/search/audio.html (". . . if we could go back in time, we'd add a portion of a sentence asking to vacate the damages award, or could we wish that 'remand' was a word that was at the end of the

court's opinion, the answer is obviously 'for sure'"). Instead, Becton not only made no effort to raise the issue, it arguably made an effort to avoid raising the issue by only requesting the district court to reverse the judgment or order a new trial on infringement and/or validity. J.A. 1057, 1099.

Becton contends nonetheless that the district court was free to revisit damages because doing so at least would have been consistent with this court's mandate. While the district court was certainly free to take action consistent with the mandate, *see Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1484 (Fed. Cir. 1998), that does not mean that it was likewise free to disturb matters that were within the mandate. "Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). Becton's failure in the prior appeal to raise the issue of remand is critical given the general nature of the jury verdict on damages and Retractable's lump-sum reasonable royalty theory that was presented to the jury.

> [The] responsibility [to review judgments appealed to us] can be properly discharged only if the court assumes that the appellant has fully set forth its attack on the judgment below; only then will the court be able to address with confidence the range of issues determined by the appealed judgment. . . . An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived. Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.

166 F.3d at 1383. The damages award was within the scope of the appealed judgment and thus was incorporated into the mandate when Becton failed to raise the issue of a remand to consider parsing damages by product.

Becton contends that a damages amount attributable solely to the 1 mL syringe was not determined by the jury or decided by the district court in the original judgment and, thus, should not be deemed within the court's mandate. However, the damages award was the result of the general nature of Interrogatory No. 6. The judgment included the $5 million infringement award, which did not specify amounts separately for each product and could have been based on Retractable's lump-sum reasonable royalty theory, which was not dependent on the type or number of products sold but rather on granting Becton freedom to operate. Becton neither objected to Interrogatory No. 6 nor indicated to this court or Retractable that it believed a partial reversal would require revisiting that award. Thus, the $5 million award was within the scope of the judgment, was incorporated into the mandate without argument, and was precluded from further consideration by the district court.

This case is unlike *Lubrizol*, in which the district court never reached the issue of infringement under the doctrine of equivalents and thus was free to consider the issue following reversal on literal infringement. *Lubrizol*, 137 F.3d at 1484. Nor is the case like *Laitram,* 115 F.3d at 952, in which the district court was free to address issues "not only undecided on the merits by the trial court because they were moot, and thus on appeal unripe, but also neither presented to us nor discussed in our opinion, nor necessary to our disposition of the appeal." Remand was not necessary in either case for the district court to address those issues because the issues were not within the appealed judgment.

Nor does an exception to the mandate exist in this circumstance. Becton contends that a substantial change in the evidence has occurred and that such a change warrants an exception to the mandate rule. In *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001), the court noted that the mandate rule was "prudential" and that "courts have considered revisiting issues otherwise foreclosed in circumstances where there has been a substantial change in the evidence." *Tronzo* later refers to a "substantial change in the facts." *Id.* at 1350. Of the four cases *Tronzo* cites in support for exceptions to the mandate rule, two cases discuss the force of the mandate rule in the face of changes in the underlying evidence or facts: *Arizona v. California*, 460 U.S. 605 (1982) and *Heathcoat v. Potts*, 905 F.2d 367 (11th Cir. 1990). In *Arizona*, the Court held that the Court may revisit an issue "in reaction to changed circumstances" that "could not be disposed of at the time of an initial decree." 460 U.S. at 623–24. In *Heathcoat*, the Eleventh Circuit noted that an exception exists to the law of the case doctrine when "a subsequent trial produce[d] substantially different evidence."[1] 905 F.2d at 371. Here, as discussed above, Becton could have and should have raised the issue at the previous appeal. Further, no subsequent trial has occurred and there has been no actual change in the evidence or the facts.

The only intervening change Becton identifies is this court's previous opinion, reversing-in-part the infringement verdict based on claim construction. However, Becton identifies no support for its position that a decision of this court can be considered a change in the "evidence"

---

[1] *Heathcoat* discusses two other exceptions, neither of which is relevant to Becton's argument that a substantial change in the evidence allows an exception to the mandate rule.

sufficient to create an exception to the mandate of that same decision. Contrary to Becton's contention, the court in *Tronzo* did not substantively analyze whether its own decision was a substantial change in the evidence or facts, but rather whether the *district court's* decision was such a change. In *Tronzo*, a jury awarded approximately $7 million in compensatory damages and $20 million in punitive damages. 236 F.3d at 1345–46. The defendant, Biomet, appealed with respect to infringement, validity, state law claims, and the compensatory damages associated with those claims. *Id.* at 1346. Biomet did not appeal punitive damages. At the first appeal, this court reversed regarding aspects of infringement, validity, and compensatory damages for the state law claims. *Id.* This court then specifically remanded for the district court to reconsider compensatory damages. *Id.* The district court reduced the compensatory damages to $520 and correspondingly reduced punitive damages to $52,000. *Id.* However, Biomet had not appealed the punitive damages award. Thus, without an exception to the rule, the mandate rule precluded the district court from revisiting the issue. On a second appeal, this court carefully analyzed whether the district court's reduction of the compensatory damages was a substantial change sufficient to trigger such an exception and concluded it was not. *Id.* at 1349–50. Significantly, however, the subject of that analysis was the *district court*'s change to the compensatory damages award, not this court's reversal and remand that prompted the change in the first instance.

Becton has not presented a compelling reason to extend *Tronzo*. Becton contends that the damages award is inconsistent with the mandate, but none of the arguments are persuasive. Becton points out that the 3 mL syringe, whose infringement finding was reversed, far outsold the 1 mL syringe. But there is no way to conclude from this record what the significance of that alleged disparity might have been in the jury's deliberations.

Becton next contends that the district court's modification of the injunction to remove the 3 mL syringe from its scope is inconsistent with the district court's refusal to revisit damages and that, had the district court not issued an injunction in the first instance, Becton's victory on the previous appeal would have had no impact at all. However, the injunction—unlike the verdict—clearly implicated each syringe individually and easily could be parsed. Moreover, a district court has broad equitable authority to modify its own injunction prospectively, authority that is independent of an appellate mandate. *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008). To the extent that Becton desired a partial reversal to have greater impact, it had the opportunity to request a remand on damages in the first appeal but did not. Becton points out that the district court did order prejudgment interest beginning in 2002, when the non-infringing 3 mL syringe entered the market, rather than 2003, when the infringing 1 mL syringe entered the market. However, Becton is not seeking recalculation of prejudgment interest but an adjustment of the $5 million damages award— an argument that could have and should have been addressed previously. Becton argues that the district court's rationale would leave the $5 million award unassailable even if this court had reversed infringement findings of both syringes. But that is not the current circumstance, and moreover in that situation, the complete reversal would have erased the judgment entirely. Lastly, Becton argues that the mandate rule should account for some policy or principle of fairness, but again: Becton had a fair opportunity to raise the issue during the prior appeal but did not. To permit this issue to be revisited anew would be to endorse an end-run around the mandate rule, which we are not about to do.

Concluding that the mandate rule forecloses the relief that Becton seeks, we need not reach the arguments as to

Becton's waiver of the issue or whether Rule 60(b) was an appropriate vehicle for the requested relief.

## IV. CONCLUSION

For the foregoing reasons, this court affirms.

**AFFIRMED**